**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **Case No. 8:19-cr-91-T-35AAS**

**JOSE VARGES-MERIDA**
_____/

## SENTENCING MEMORANDUM
## IN SUPPORT OF A REASONABLE SENTENCE

The Defendant, Jose Varges-Merida, by undersigned counsel, and

pursuant to 18 U.S.C. § 3553(a), files this Sentencing Memorandum in

support of a sentence below guidelines of ten years, the lowest possible

sentence under the mandatory minimum provisions. Such a sentence is no

greater than necessary to accomplish the goals of sentencing. As grounds

in support, Mr. Varges-Merida submits the following:

### *MR. VARGES-MERIDA'S HISTORY AND CHARACTERISTICS*

Mr. Varges-Merida grew up tumultuously and in extreme poverty.

PSR ¶¶52-53. His father abused his mother beginning when Mr. Varges-

Merida was very young. *Id*. His father played almost no positive role in his

life, but rather abused his mother until she left him. *Id*. The abuse and later

split significantly affected his life. *Id*. Because of the abuse and split, Mr.

Varges-Merida was sent away to live with his maternal grandparents. *Id*.

Mr. Varges-Merida was on his own from a very young age, struggling in

deep poverty in Chiapas. PSR ¶53. In Mexico, poverty varies enormously

by region, and Chiapas is the poorest region of them all.

> No matter which way you look at it, Chiapas is the most backward of
> any state in Mexico. Its per capita income is the lowest of the 32
> federal entities, at barely 40% of the national median (Figure 1). Its
> growth rate for the decade 2003-2013 was also the lowest (0.2%),
> causing the income gap separating Chiapas from the national average
> to increase from 53% to 60%. That is to say that today the average
> income for a worker in Mexico is two and a half times greater than
> the average in Chiapas. The two next poorest states, Oaxaca and
> Guerrero, are 25% and 30% above Chiapas. According to the Instituto
> Nacional de Estadística y Geografía de México (INEGI, National
> Institute of Statistics and Geography), Chiapas is also the state with
> the highest poverty rate (74.7%) as well as extreme poverty (46.7%).[1]

Chiapas, Mexico maintains enormous natural beauty side by side

with extraordinary poverty. The area houses the largest indigenous

population in Mexico. The poverty remains entrenched and dire, causing

Pope Francis to condemn what he called "the systemic and organized way

---

[1] Levy, D., et al., 2015. Why is Chiapas Poor?. Copy at http://www.tinyurl.com/y2wwngjd

your people have been misunderstood and excluded from society".[2]

Growing up in the area gives children the least possible chance of success in life.

By nearly every marker, life is hard to impossible. According to the United Nations' 2015 report on the status of the world's indigenous peoples, 80.6 percent of Mexico's indigenous population lives in extreme poverty, with Chiapas at 81.7% extreme poverty.[3] The majority of children in Chiapas go to bed hungry.[4] The infant mortality rate is 50 percent higher among indigenous children than it is among the non-indigenous. For children that survive those rates, 44 percent of indigenous children are malnourished, compared to only 17 percent of non-indigenous children.[5] On top of all that, the indigenous population in Mexico has a lower life

[2] Pullella, Phillip and Joanna Zuckerman Bernstein. "Pope Courts Indigenous Mexicans as Catholic Fervor Fades." Reuters. Feb. 15, 2016. https://news.yahoo.com/pope-heads-mexicos-indigenous-south-catholic-fervor-fades-140618064.html;_ylt=A0LEVvDWR8NW7h0AYlQnnIlQ;_ylu=X3oDMTEyaHRvazA2BGNvbG8DYmYxBHBvcwMzBHZ0aWQD QjE2MzhfMQRzZWMD

[3] "State of the World's Indigenous Peoples." 2nd Volume. United Nations. 2015. http://www.un.org/esa/socdev/unpfii/documents/2015/sowip2volume-ac.pdf

[4] "More than 20 Million Mexican Children and Adolescents Live in Poverty (More than 4 Million in Extreme Poverty)." Yucatan Times. May 26, 2014. http://www.theyucatantimes.com/2014/05/more-than-20-million-mexican-children-and-adolescents-live-in-poverty-more-than-4-million-in-extreme-poverty/

[5] Servan-Mori, E., Torres-Pereda, P., Orozco, E., & Sosa-Rubí, S. G. (2014). "An Explanatory Analysis of Economic and Health Inequality Changes Among Mexican Indigenous People." 2000-2010. International Journal for Equity in Health, 13(1), 21-21. http://equityhealthj.biomedcentral.com/articles/10.1186/1475-9276-13-21#CR36.

expectancy than the non-indigenous, with a 5-year gap in life expectancy.[6] And in Mexico's indigenous communities, only 27 percent of children graduate from high school. While the national illiteracy rate in Mexico is 8.4 percent, among the indigenous populations the illiteracy rate is raised to 44 percent.[7] When Mr. Varges-Merida was young, he endured a poverty unknown to many. His grandfather was unreliable as well. He watched his father abuse his mother, and now watched his grandfather drink heavily and vanish for a week at a time.

## A Just Punishment for Mr. Varges-Merida

Poverty and abuse leave indelible prints on people - and his prior experiences changed him, and affected the direction of his life forever. Mr. Varges-Merida's life experiences, history, and characteristics are intertwined with the offense conduct and his ability to be rehabilitated. All of this plays into this Court's determination of a just punishment in this

---

[6] United Nations, 2015.
[7] "Only 27 Percent of Indigenous Mexicans Finish High School." PressTV News Videos. Jun. 28, 2014. https://www.youtube.com/watch?v=t_w4uUGfvGc

case. Mr. Varges-Merida underwent negative experiences during his life, with a trajectory that led him to make the choice to get aboard the boat carrying drugs.

Under 18 U.S. Code § 3553 (d) read the words "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Rather than incarceration that is longer than the minimum mandatory, defense requests that Mr. Varges-Merida receive the minimum sentence allowable followed by supervised release.

## Objections to the Presentence Report

### Objection one – Offense Conduct

The discovery in this case consists namely of reports issued by the Coast Guard, some video footage and photographs. Many of the videos and photographs are somewhat ambiguous without further information, and certainly open to interpretation. The only conduct that both sides conceded was provable and stipulated is reflected in the plea agreement.

Such language was carefully constructed and took into account some differences of opinion as to the evidence. Undersigned suggests that the offense conduct contained in the plea agreement reflects the best factual basis in the case.

The response of probation indicates the offense conduct was compiled from law enforcement reports, video and more statements from law enforcement. Such a review seems extremely one-sided, consisting of mostly repasting material straight from law enforcement reports. The paragraph quoted from the *Guide for Judiciary Policy* indicates a far more robust method, including a number of sources, conversations with both sides and independent witnesses. No such investigation appears to have taken place in this case.

**Objection two -  USSG § 2D1.1(b)(2), Use of Violence**

In the factual section of the plea agreement, Mr. Vargas Merida admitted to taking evasive measures to avoid capture. He admitted to

intentionally steering the boat in the direction of the USCG boat. "Seconds

later" the GFV struck the other boat.

It is certainly true that he was trying to drive the boat away from the Coast

Guard, and he has admitted to that conduct. However, he never had an

intent to do violence or to harm anyone. As recorded on the overhead

video footage, he attempts to swing the small vessel right and get out

ahead of the Coast Guard boat to attempt to get away. The enhancement

scored by probation requires he used violence, and he did not. In this

paragraph, it says he intentionally steered his boat with the purpose to

strike the other boat and such an inference is not accurate nor is it in the

footage.

    The enhancement in § 2D1.1(b)(2) requires a finding regarding his

intent before applying the two levels. "As defined in contemporary

dictionaries, "violence" means "[t]he use of physical force, [usually]

accompanied by fury, vehemence, or outrage; [especially] physical force

unlawfully exercised with the intent to harm," violence, Black's Law

Dictionary (10th ed. 2014), or "the use of physical force so as to injure, abuse, damage, or destroy," violence, Merriam-Webster Online, https://www.merriamwebster.com/dictionary/violence (last visited June 24, 2019). See <u>United States v. Peneda-Duarte</u>, 933 F.3d 519 (6th Cir. 2019).

Probation cites two reasons for the enhancement, given the objection. The first reason is that the video from a Go Pro shows an "intentional" action to steer towards the USCG boat. Upon review of the footage of the video mentioned, reasonable parties can certainly disagree with that finding. In that video, the boat driven by Mr. Varges-Merida is driving away when a Coast Guard official begins shooting at the boat. The boat eventually veers towards the Coast Guard boat but right before that occurs, Mr. Varges-Merida is not even looking in that direction. Furthermore, at least his right hand is raised in the air due to the shooting. When the boat veers towards the Coast Guard, it appears he does not have his hands on the steering wheel and is not looking toward the USCG boat. A screenshot of the referenced video is below:



The boat does careen toward the USCG boat, but right before it appears no one is actually aiming it or even steering it. The image shows a distinct lack of intention in this case. The use of violence (subsection (b)(2)) calls for a two-level enhancement only if "the defendant used violence, made a credible threat to use violence, or directed the use of violence ….". The application note 11(B) also states that this subsection would not apply to a defendant who "merely possessed" a dangerous weapon but did not use violence, make a credible threat to use violence, or direct the use of violence.

The second reason appears to be that he entered a plea to 18 U.S.C. 111, which probation infers that forcible equals intentional acts of violence. Such an inference is unsupported. The statute is clear in the case law. The twenty-year maximum penalty applies whenever a person commits any act listed in § 111(a) while using a deadly or dangerous weapon. <u>United States v. Siler</u>, 734 F.3d 1290, 1296 (11th Cir. 2013) The misdemeanor offense of simple assault of a federal officer or employee is assault, which does not involve actual physical contact, a deadly or dangerous weapon, bodily injury, or the intent to commit murder or certain other felonies is all that is needed to meet the requirements of subsection (a)  <u>U.S. v. Hathaway</u>, C.A.10 (Kan.) 2003, 318 F.3d 1001.

In fact, one case upholding a conviction under that subsection was based on a man screaming obscenities and waving a metal rod in the air towards a postal employee. The actions delayed the mail and the Court found that was "ample evidence to sustain the conviction on the basis that Henderson willfully and forcibly impeded, intimidated and interfered with a United States mail carrier." <u>United States v. Henderson</u>, 770 F.2d 724, 730 (8th Cir.

1985). Here the attempts to evade the other boat did impede and interfere with the Coast Guard taking the men into custody, as well as causing the delay. Such an action alone, when combined with the use of a deadly weapon, is enough to convict under the statute to which he pleaded guilty. Such actions do not constitute the intention to carry out violence against the agents. Undersigned holds the Government to their burden of establishing an intention to carry out violence or harm people. The enhancement has been applied in error.

**Objection three - Official Victim, USSG § 3A1.2(c)(1)**

Probation additionally scored six levels under §3A1.2(c)(1). Such an enhancement is erroneous for similar reasons as are argued above. The enhancement requires proof that Mr. Varges-Merida either knew or had reasonable cause to believe the person was a United States law enforcement officer. In the case, the USCG boat comes up from behind at a high rate of speed. The personnel are wearing red vests which show Coast Guard on the back of the jacket. The designation is made in English as well.

None of the individuals on the boat are from the United States, nor are they necessarily familiar with the indicia of the United States Coast Guard. Certainly they knew someone was chasing them, and later shooting at their boat. Such knowledge must be proved by the Government.

The next requirement requires assaultive conduct, which is done in a manner that creates a substantial risk of serious bodily injury. The application note for the provision notes the conduct is tantamount to aggravated assault. As argued earlier, the aggravated assault here is interfering or impeding while using a boat, which can be a dangerous weapon. Here the screenshots and video stills show that he had a hand raised and was not looking at the USCG. At the time of the veering, the Coast Guard was continually firing bullets towards the boat to disable it.

While Mr. Varges-Merida attempted to evade the boat behind him, he was not attempting to drive his boat into the Coast Guard boat to injure them. In fact, with his hand/s up in the air, the boat was not even being steered when it clipped the USCG boat. Suh actions are similar to another case. In that case, a man was driving to evade capture when his car hit stop

sticks and lost control. While it veered off, it struck another police car. The

Court reversed the enhancement, noting that:

> We cannot conclude from this evidence that Hampton intended to hit anyone, let alone a law enforcement officer. Moreover, we disagree with the district court that the enhancement should apply because the crash was a foreseeable consequence of the high-speed chase. Rather, the government must prove that 1) the defendant engaged in action akin to aggravated assault, and 2) the defendant had reason to believe the intended and actual victim was a law enforcement officer. USSG § 3A1.2(b)(1); accord United States v. Castillo, 924 F.2d 1227, 1236 (2d Cir.1991) (holding that an enhancement under § 3A1.2 cannot apply absent evidence that defendant knew or had reasonable cause to believe victim was a law enforcement officer). In this case, the meager evidence presented by the government actually points to the opposite conclusion since Hampton's vehicle was out of his control when it struck the officer.

United States v. Hampton, 346 F.3d 813, 815 (8th Cir. 2003).

The facts are similar. Here the boat was attempting to evade capture

by turning in front of the USCG boat to attempt to get away. Once the

shooting began to increase, he put his hand/s up in the air. At that point,

the boat veers right toward the USCG boat without anyone steering. Such

actions do not show an intent to hit anyone. Probation seeks the

enhancement again based on the fact that he entered a plea to 18 USC

§111(a)(b). As noted earlier, a plea to that statute is not de facto indication

that a person intentionally sought to harm. The enhancement has been applied in error.

The proper guideline score should be a level 40, with three levels decreased for acceptance, totaling a level 37. At a category I, the guideline range is 210-262 months (17.5-21.83 years), a range that is far greater than is necessary in this case. Because the boat is considered a dangerous weapon, he does not receive the benefit of safety valve, despite truthfully debriefing.

## *Conclusion*

Because of the mitigating history and characteristics of Mr. Varges-Merida and the facts and circumstances surrounding the non-violent nature of his offense, it is respectfully suggested that a sentence no greater than 10 years to be followed by a term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. '3553(a). As a child, Mr. Varges-Merida was exposed to father and grandfather's neglect, alcohol

abuse, physical abuse of his mother, and was on his own - all of which

adversely affected Mr. Varges-Merida during his formative years.

While these prior life circumstances do not excuse Mr. Varges-

Merida' present criminal behaviors, they should be considered by this

Court when determining a reasonable and appropriate sentence in light of

the §3553 factors. As the Supreme Court reflected in the *Gall* opinion, "it

has been uniform and consistent in the federal judicial tradition for the

sentencing judge to consider every convicted person as an individual and

every case as a unique study in the human failings that sometimes

mitigate, sometimes magnify, the crime and the punishment." *Gall v.*

*United States*, 128 S.Ct. 586, 598 (2007). In light of the above mitigating

offender characteristics, it is respectfully submitted that the lowest

permissible sentence would be an appropriate.

**WHEREFORE**, the Defendant, **JOSE VARGES-MERIDA**,

respectfully moves this Honorable Court, based upon the factors

enumerated in 18 U.S.C. § 3553(a) and consistent with the recent advice

from the United States Sentencing Commission, to impose a sentence of 10

years of incarceration to be followed by a term of supervised release. Mr.

Varges-Merida respectfully submits this is reasonable and accomplishes

the goals of sentencing.

DATED this 19th day of August 2020.

Respectfully submitted,

JAMES T. SKUTHAN
ACTING FEDERAL DEFENDER

**/s/ *Nicole V. Hardin***
Nicole V. Hardin
Florida Bar No. 0026194
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile:  (813) 228-2562
Email:  Nicole_Hardin@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of March 2020 a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

Daniel Baeza, AUSA

/s/ *Nicole V. Hardin*
Nicole V. Hardin
Assistant Federal Defender